Jackie L. NEESE, individually and on
behalf of all others similarly
situated, Appellants,

v.

STATE of Alaska, and Lithia Chrysler
Jeep of Anchorage, Inc., Lithia of An-
chorage, Inc. d/b/a Lithia Dodge of
South Anchorage, Lithia of Southcen-
tral Alaska, Inc. d/b/a Chevrolet of Was-
illa, Lithia Imports of Anchorage, Inc.
d/b/a Lithia Hyundai of Anchorage, Ap-
pellees.

No. S–12624.

Supreme Court of Alaska.

July 10, 2009.

As Amended on Rehearing Nov. 20, 2009.

See also, 210 P.3d 1213.

984

Trena L. Heikes, Law Office of Trena L. Heikes, and Chris Bataille, Walther & Flanigan, Anchorage, for Appellants.

Clyde E. Sniffen, Jr., Senior Assistant Attorney General, Anchorage and Talis J. Colberg, Attorney General, Juneau, for Appellee State of Alaska.

Howard S. Trickey, Gary C. Sleeper, and Matthew Singer, Jermain Dunnagan & Owens, P.C., Anchorage, for Lithia Appellees.

Before: MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

After an investigation into violations of state consumer protection laws, the state entered into a consent judgment with a large car sales company. A group of consumers who had purchased vehicles at the company's dealerships moved to intervene in the consent judgment proceeding, but the superior court denied intervention. The consumers appeal, arguing that the superior court erred by denying intervention as of right and abused its discretion by denying permissive intervention. Because the consumers have not met the requirements for intervention as of right or permissive intervention, we affirm the decision of the superior court.

## II. FACTS AND PROCEEDINGS

This case involves the settlement of a consumer protection investigation by the state attorney general concerning violations of the Alaska Unfair Trade Practices and Consumer Protection Act by several of the Lithia auto dealerships in Alaska.

The state's inquiry into Lithia's practices began in July 2001 when Assistant Attorney General Clyde Sniffen sent a letter to the general manager of Lithia Chrysler Jeep of Anchorage. In this letter, Sniffen stated, "[w]e have ... taken the position that document preparation fees may be charged by a dealer, but these charges must be included in the advertised price for the vehicle. The only 'fees' that can be excluded from the advertised price are licensing and registration fees actually paid to a state agency." The attorney general did not pursue enforcement action after this letter was sent.

Four years later, in the course of an individual car purchaser's private action against Lithia for failure to disclose required information, counsel for the purchaser—who also represent the appellant used car purchasers in this case (consumers)—discovered numerous consumer complaints filed against Lithia

with the Better Business Bureau. In July 2005, while the individual case was pending, consumers' counsel contacted Sniffen and advised him of evidence that Lithia had failed to inform a purchaser, as it was required to do by law, that the vehicle she was purchasing had previously been wrecked and repaired. In September 2005 consumers' counsel forwarded to Sniffen other consumer complaints against Lithia. The complaints attacked Lithia's failure to disclose information regarding vehicles sold to consumers in violation of AS 45.25.465 and its practice of charging consumers a $200 document preparation fee in violation of AS 45.25.440 and AS 45.25.460. In December 2005 consumers' counsel met with Sniffen and revealed their intent to file class action suits against Lithia on behalf of consumers injured by Lithia's illegal practices.

In January 2006 the consumers filed their class action complaint against Lithia alleging violations of the used vehicle disclosure provisions of AS 45.25.465 and AS 45.25.470. The complaint named eight individual plaintiffs who would serve as class representatives for all consumers who had purchased used vehicles from various Alaska Lithia dealerships since July 1, 2002.

While the consumers were preparing their class action, the attorney general was investigating Lithia's charging of document preparation fees and Lithia's failure to provide statutorily required disclosures to vehicle purchasers. After receiving numerous complaints about Lithia's actions, the attorney general served Lithia with a subpoena requesting information relating to used vehicle sales at the three largest Alaska Lithia dealers. Lithia responded by submitting numerous "deal files" containing purchase and sale documents for used vehicle sales.

As a result of its investigation and review of Lithia's "deal files," the attorney general entered into a consent agreement with Lithia on December 1, 2006. Pursuant to the agreement, the state filed a complaint against Lithia in the superior court seeking injunctive relief, civil penalties, and restitution and filed the consent judgment the same day.

The consent judgment was intended to resolve all the state's claims asserted in the complaint, and provide restitution and other relief to consumers who suffered damage as a result of Lithia's conduct. It includes injunctive relief mandating that Lithia not sell a used vehicle unless Lithia complies with the disclosure requirements of AS 45.25.465, and not sell a motor vehicle in violation of AS 45.25.440. The consent judgment also requires that Lithia not charge an administration fee, document preparation fee, or any other dealer fee unless the fee is included in the advertised price of the vehicle. In addition, the consent judgment assesses a $500,000 civil penalty against Lithia. It also requires Lithia to provide restitution to customers by refunding dealer fees charged in addition to the advertised price of vehicles sold. In addition to the refund of dealer fees, the consent judgment mandates that Lithia pay restitution to customers who can establish they have suffered an ascertainable loss of money or property as a result of Lithia's failure to comply with the disclosure requirements of AS 45.25.465 and AS 45.25.470.

Five days after the state filed the consent judgment, the consumers filed their second class action lawsuit based on various Lithia dealerships' practice of charging dealer fees not included in the advertised price of the vehicle in violation of AS 45.25.440.[1] On the same day, the consumers moved to intervene in the consent judgment proceeding.

The superior court denied the motion to intervene in February 2007. In its order, however, the court required the state and Lithia to create a modified consent judgment that included notice to Lithia customers and a right to opt out of the settlement. The court emphasized that customers who opt out of the consent judgment could pursue separate recovery and that the proposed intervenors could file an amicus brief to assist the court in reviewing the consent judgment.

The consumers appealed the superior court decision denying their motion to intervene. Nonetheless, they continued to partic-

___

1. The two class action lawsuits were consolidated in May 2007.

ipate in the superior court proceeding by filing an amicus brief regarding the merits of the consent judgment. After the state added the required opt out provision, the superior court approved the modified consent judgment in April 2007.

In May 2007 the consumers sent Lithia notice that they wished to opt out of the consent judgment. Nonetheless, the consumers continued to participate in the trial court proceeding by filing a motion to stay the enforcement of the consent judgment pending our decision in this appeal. In the meantime, however, Lithia and the state began the process of notifying consumers of the settlement terms and opportunity to opt out. They sent a notice of settlement to all consumers who had purchased a vehicle from an Alaska Lithia dealership since October 1, 2002.

The superior court denied the consumers' motion for a stay. The consumers then filed a motion for a stay with this court. We granted the motion and stayed the consent decree of the superior court pending resolution of this appeal.

## III. STANDARD OF REVIEW

■■■ We review the denial of a timely motion to intervene as of right using our independent judgment.[2] We review the denial of a motion for permissive intervention using the abuse of discretion standard.[3]

## IV. DISCUSSION

On appeal the consumers argue that they have an absolute right to intervene and alternatively that they should have been permitted to intervene. The state responds that the consumers cannot meet the test for intervention as of right nor the requirements for permissive intervention. Lithia agrees with the state that the consumers should not be permitted to intervene.

### A. The Superior Court Correctly Concluded that the Consumers Did Not Meet the Alaska Civil Rule 24(a) Standard for Intervention as of Right.

■■■ Alaska Civil Rule 24(a) governs intervention as of right. It provides:

Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

We will "liberally construe" this rule.[4] As we have stated, Civil Rule 24(a) contains a four-part test for intervention:

(1) the motion must be timely; (2) the applicant must show an interest in the subject matter of the action; (3) the applicant must show that this interest may be impaired as a consequence of the action; and (4) the applicant must show that the interest is not adequately represented by an existing party.[5]

Although the consumers meet the first element of this test, they fail to establish that they satisfy the second and third elements.

#### 1. The motion to intervene was timely.

■■ "We will not hold that a motion to intervene is untimely if no party raises timeliness as an issue."[6] Neither Lithia nor the state argue that the motion to intervene was untimely. Thus, we accept the motion as timely.

#### 2. The consumers do not possess a valid interest in the property or transaction that is the subject of the action.

The consumers argue that their interest is sufficient to justify intervention as a matter

**2.** *Anchorage Baptist Temple v. Coonrod*, 166 P.3d 29, 32 (Alaska 2007).

**3.** *McCormick v. Smith*, 793 P.2d 1042, 1044 n. 3 (Alaska 1990).

**4.** *Coonrod*, 166 P.3d at 32–33 (quoting *Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 912 (Alaska 2000)).

**5.** *Id.* at 33 (quoting *Kritz*, 3 P.3d at 911).

**6.** *Id.*

of right. They provide six reasons to support their position that they have an adequate interest: (1) they were involved in the motor vehicle transactions at the root of the lawsuit; (2) they are the ones who have sustained a financial loss; (3) they are the intended beneficiaries of the motor vehicle and consumer protection statutes; (4) they are litigants in a pending class action lawsuit concerning the same violations at issue in the consent judgment; (5) the consent judgment does not include the consumer remedies and protections that they are seeking in the class action; and (6) their due process rights were violated because the state's opt out notice did not provide sufficient information for a reasoned decision whether to opt out.

The state and Lithia both respond that the consumers cannot demonstrate an interest in the consent judgment because they have opted out of the action in order to pursue their own class action lawsuit. The consumers reply that they had standing to intervene when they moved to intervene because they had not successfully opted out, and, regardless, the opt out provision did not impair their standing to intervene because the state lacked the authority to resolve their claims. The consumers also assert in their reply that they are entitled to intervene because the consent judgment is prejudicial to their rights in their separate class action, as it has *res judicata* effects on the class action.

 In order to satisfy the "interest" element of the intervention standard, the consumers' interest in the *State v. Lithia* action "must be 'direct, substantial, and significantly protectable.'"[7] Not everyone affected by a lawsuit is entitled to intervene. As we stated in *Anchorage Baptist Temple v. Coonrod*, "[t]hose affected, even negatively, by a lawsuit may be significantly more numerous than those who are entitled to intervene," and "an indirect financial interest, standing alone, is insufficient to secure intervenor status."[8] In *Alaskans for a Common*

*Language, Inc. v. Kritz*,[9] we emphasized that there is an enhanced intervention standard in cases involving a government's sovereign power: "Generally when the government exercises its sovereign power to enforce and defend duly enacted laws, no other entity can have an interest sufficient to satisfy Civil Rule 24(a)."[10]

Although the consumers have claims identical to those settled by the consent decree, they could not possess adequate interests to satisfy this requirement if the attorney general "exercise[d] its sovereign power to enforce and defend duly enacted [consumer protection] laws" in investigating Lithia's violations and reaching a settlement agreement with Lithia.[11] When the government exercises such powers, "no other entity can have an interest sufficient to satisfy Civil Rule 24(a)."[12]

Here, the attorney general exercised the state's sovereign power under the Unfair Trade Practices and Consumer Protection Act. Alaska Statute 45.50.501 provides:

(a) When the attorney general has reason to believe that a person has used, is using, or is about to use an act or practice declared unlawful in AS 45.50.471, and that proceedings would be in the public interest, the attorney general may bring an action in the name of the state against the person to restrain by injunction the use of the act or practice. . . .

(b) The court may make additional orders or judgments that are necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of an act or practice declared to be unlawful by AS 45.50.471.

The attorney general's authority to bring an action to restrain Lithia's use of unlawful practices, along with the superior court's power in such an action to make additional orders or judgments to restore used car pur-

---

**7.** *Id.* (quoting *State v. Weidner*, 684 P.2d 103, 113 (Alaska 1984)).

**8.** *Id.* at 33.

**9.** 3 P.3d 906 (Alaska 2000).

**10.** *Id.* at 912.

**11.** *See id.*

**12.** *Id.*

chasers' rights, extinguished any intervention interest the consumers may have held.

Federal cases involving attempts to opt out of class actions support the conclusion that the consumers do not have an adequate interest here. In *In re Lorazepam & Clorazepate Antitrust Litigation,*[13] the United States District Court for the District of Columbia denied intervention in a private antitrust class action settlement partly because the parties who wished to intervene could still opt out and preserve their rights to pursue their own claims independently.[14] In *In re Vitamins Antitrust Class Actions,*[15] the United States Court of Appeals for the District of Columbia affirmed the trial court's denial of a motion to intervene filed by presumptive class members who had opted out of a class settlement concerning price-fixing by vitamin manufacturers because class members who opted out of the class settlement had no standing to object to it.[16] Similarly, in *Mayfield v. Barr,*[17] the District of Columbia Court of Appeals held that appellants who chose to opt out of a class action employment discrimination case and preserve their right to litigate their claims independently lacked standing to challenge an order approving a class settlement agreement.[18] The court explained, "[o]ur decision rests on the principle that those who fully preserve their legal rights cannot challenge an order approving an agreement resolving the legal rights of others."[19] Generally, federal courts hold that a party that has opted out of a class settlement may not intervene unless the party suffers some actual prejudice from the settlement, such as being stripped of a legal claim or cause of action.[20]

Here, the consumers forfeited any potential remaining interest in the consent judgment when they opted out of the consent judgment approximately six months after it was filed, and three months after the superior court denied their motion to intervene. The consumers who opted out fully preserved their statutory right to pursue their separate claims in their private class action suit. Thus, they may not be parties to the consent judgment, which only resolves the rights of Lithia customers who choose not to opt out.

Although the consumers insist that the consent judgment could have *res judicata* effects on their separate class action claims, in actuality it will not have such effects. As we explained in *Sengupta v. University of Alaska,*[21] the doctrine of *res judicata* "provides that a judgment in a prior action will bar a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action."[22] The consent judgment does not involve the consumers who have opted out, and it does not cover their private causes of action against Lithia, so *res judicata* would not preclude the consumers from litigating their claims against Lithia in their separate case.

In sum, because the attorney general exercised the sovereign authority to enforce state consumer protection laws, and because the consumers have opted out of the consent judgment, the consumers lack a valid intervention interest.

### 3. The consumers' alleged interest in the property or transaction was not impaired.

The consumers' lack of a valid intervention interest is a sufficient basis on which to uphold the superior court's denial of inter-

---

**13.** 205 F.R.D. 363 (D.D.C.2001).

**14.** *Id.* at 367.

**15.** 215 F.3d 26 (D.C.Cir.2000).

**16.** *Id.* at 28–29.

**17.** 985 F.2d 1090 (D.C.Cir.1993).

**18.** *Id.* at 1092–93.

**19.** *Id.* at 1093. Other federal courts of appeal have come to the same conclusion. *See, e.g., In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1102–03 (10th Cir.2001).

**20.** *Integra Realty Res.,* 262 F.3d at 1102–04; *Mayfield,* 985 F.2d at 1093.

**21.** 21 P.3d 1240 (Alaska 2001).

**22.** *Id.* at 1251.

vention as of right. Nonetheless, we consider whether they have met the third test for intervention—showing that their interest was impaired [23]—and conclude that they have not, as further support for our conclusion that the consumers have not satisfied the requirements for intervention as of right.

The consumers make three basic arguments to show that their interest has been impaired: (1) the consent judgment waives the recovery of certain remedies; (2) the consent judgment's opt out provision violates their right to due process; and (3) the consent judgment uses an overly restrictive interpretation of AS 45.25.440 and excludes recovery for violation of AS 45.25.465(a)(2). Because none of these arguments reveal an impairment of interest, the consumers fail to satisfy this requirement for intervention as of right.

### a. By opting out, the consumers maintained the right to seek their desired remedies.

■ The consumers argue that their interest was impaired because the consent judgment waives recovery of the remedies provided under AS 45.50.531 and AS 45.50.537. They provide the following list of the remedies allegedly waived by the consent judgment: treble damages, common law damages, punitive damages, costs and attorney's fees, judicial forum, discovery, and prejudgment interest. The state responds that the consent judgment does not prevent the consumers from pursuing these various remedies because they can simply opt out (as they have) to protect their interest.

Although the consumers may be correct that under the consent judgment they would not obtain the various remedies that they list, they can still pursue these remedies through their private class action because they have opted out. Nothing in the consent judgment or opt out notice precludes the consumers from seeking any desired remedies in their separate class action. Thus, their argument that their interest is impaired because the consent judgment does not include these remedies is unpersuasive.

### b. The consent judgment does not violate the consumers' right to due process.

The consumers argue that the consent judgment violates their due process rights because the opt out notice does not provide them with sufficient information to decide whether to opt out.

■ Although we have not previously addressed the adequacy of an opt out notice in a consent judgment proceeding, we look to our rules governing class actions to determine the sufficiency of notice here.[24] Civil Rule 23(c)(2) provides, *inter alia,* that notice for a class action suit "shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; [and] (B) the judgment, whether favorable or not, will include all members who do not request exclusion...."[25] Because we apply Civil Rule 23 to procedural aspects of representative cases like this one,[26] the Civil Rule 23(c)(2) notice standard applies here. Civil Rule 23(e), governing settlement notices for class actions, also applies here. This rule simply states that the notice of the proposed compromise "shall be given to all members of this class in such a manner as the court directs." We have held that Civil Rule 23(e) notices are "sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the

---

**23.** *Anchorage Baptist Temple v. Coonrod,* 166 P.3d 29, 32–33 (Alaska 2007).

**24.** *See State v. First Nat'l Bank of Anchorage,* 660 P.2d 406, 416 (Alaska 1982) (explaining in case in which state acted in representative capacity against a private entity that "guidance as to the procedural aspects of a case such as this may be found in our own rule governing the maintenance of representative actions, Civil Rule 23").

**25.** A third requirement of Civil Rule 23(c)(2), set out in subsection (C), is that the notice advise each class member that "any member who does not request exclusion may, if the member desires, enter an appearance through his counsel." This subsection, because it is not essential to fair notice, is not applicable in this case. *See First Nat'l Bank,* 660 P.2d at 417.

**26.** *Id.*

court files, and that any class member may appear and be heard at the hearing." [27]

The opt out provision reads as follows:

### Right to Opt Out of the Settlement

All persons who purchased a vehicle from any Alaska Lithia dealership since October 1, 2002, are subject to the terms of this settlement and will be bound by it, unless you choose to opt out, as described below. If you decide to participate in the settlement, you will waive any legal rights and remedies that you may have that are the subject of the Consent Judgment. *If you do not wish to participate in this settlement and be bound by its terms, you have a right to opt out.* If you opt out, there may be other legal rights and remedies available to you, so you may wish to consult with an attorney before deciding whether to opt out.

If you do not want to participate in the settlement and choose to opt out, you may do so by sending the enclosed Opt Out Form to the address provided on the form. Your Opt Out Form, or a letter containing substantially the same information, must be postmarked no later than August 2, 2007. Opt Out Forms that are postmarked after the above date will not be effective. **IF YOU DO NOT OPT OUT OF THE SETTLEMENT, THEN YOU WILL BE BOUND BY THE TERMS OF THE CONSENT JUDGMENT[.]**

If you wish to review the court file in *State of Alaska v. Lithia,* 3AN–06–13238 CI, you may do so at the Anchorage Superior Court, 825 West 4th Avenue. You can also contact Assistant Attorney General Clyde E. Sniffen, Jr. at the Alaska Attorney General's Office, 269–5200 (1–888–576–2526 outside Anchorage) with any questions.

This opt out notice meets the Civil Rule 23(c)(2) standard for adequate notice because it notifies each member that the court will exclude the member from the class if the member requests exclusion by a particular date and that the judgment will include any member who does not opt out. The notice also meets the requirements of Civil Rule 23(e) because it informs class members of the nature of the action, the general terms of the settlement, that more information is available in court files, and that a class member may appear and be heard at the hearing. In addition, the notice goes beyond the requirements of Civil Rules 23(c)(2) and (e) when it recommends consulting with an attorney to determine if participation in the settlement is the best option because the consumer may be forfeiting legal rights and remedies. Finally, contrary to Neese's argument, there is no requirement that the notice state whether each individual consumer qualifies for recovery or that the notice explain which rights or remedies the consumer forfeits by participating in the settlement.

Because the consent judgment's opt out notice meets the requirements of Civil Rules 23(c)(2) and (e), and even provided more information than necessary to comply with Alaska law in this regard, it did not violate the consumers' due process rights.

### c. The consent judgment's interpretation of AS 45.25.440 and the absence of a provision for customers harmed by Lithia's violation of AS 45.25.465(a)(2) do not impair the consumers' interest.

▌ The consumers argue that the consent judgment impairs their interest by construing AS 45.25.440 to allow recovery of dealer fees only when consumers paid separate dealer fees in addition to the full advertised price of the vehicle, excluding consumers who paid dealer fees but also negotiated for a vehicle price below the advertised price. The consumers also argue that the consent judgment impairs their interest because it excludes recovery for consumers harmed by Lithia's violation of AS 45.25.465(a)(2), which requires dealers to disclose to purchasers that their used vehicles had been acquired "from another motor vehicle dealer, a wholesaler, or at auction."

Alaska Statute 45.25.440(a) provides: "When selling a motor vehicle, a motor vehi-

---

**27.** *Weiss v. State,* 939 P.2d 380, 400 (Alaska 1997) (quoting 2 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 8.32 (3d ed.1992) (footnotes omitted)).

cle dealer may not charge dealer fees or costs, except for fees actually paid to a state agency for licensing, registration, or title transfers, unless the fees or costs are included in the advertised price." There is no case law interpreting this provision. Regardless of the proper interpretation, however, the consumers have opted out, so they can still argue in favor of their interpretation of AS 45.25.440(a) in their private class action. Thus, the consent judgment's interpretation of the provision does not impair the consumers' interest.

The consumers argue that their interest is impaired because the consent judgment does not include claims for violations of AS 45.25.465(a)(2)—which requires dealers to disclose to purchasers that their used vehicles had been purchased "from another motor vehicle dealer, wholesaler, or at auction." Although it appears that such claims are covered by the consent judgment, whether they are covered is irrelevant because the consumers have opted out of the consent judgment and, therefore, are free to pursue such a claim in their private class action.

In sum, the consumers have not shown sufficient impairment of their alleged interests to satisfy this requirement of the intervention test.

### B. The Superior Court Did Not Abuse its Discretion in Denying Permissive Intervention Under Civil Rule 24(b).

The superior court denied permissive intervention, concluding that even though the proposed intervenors "assert issues of law and fact identical to those raised by" the state and Lithia, allowing intervention "would unnecessarily delay the resolution of this action, which will occur upon approval of the Consent Judgment." The court emphasized that the undue delay would negatively affect the Lithia customers represented by the state who are not part of the consumer class because those customers would be forced to wait even longer for the refunds due to them.

The consumers argue that the superior court abused its discretion by denying permissive intervention because their class action and the consent judgment action share common questions of law and fact, and allowing intervention would not result in prejudice or unnecessary delay to other parties.

Civil Rule 24(b) provides that "[u]pon timely application anyone may be permitted to intervene in an action when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." We review a denial of a motion for permissive intervention for abuse of discretion.[28] In *Keane v. Local Boundary Commission,*[29] we stated that " 'additional parties are ... the source of additional questions, briefs, objections, arguments and motions;' where no new issues are presented, it is most effective to allow participation by a brief amicus curiae rather than by intervention." [30]

There is no question that the consumers' claims have questions of law and fact in common with the consent judgment. The claims involve the same used vehicle purchases that are involved in the consent judgment, and the consumers allege the same violations of state consumer protection laws that are the basis for the consent judgment. Thus, they easily meet the first prong of the permissive intervention test.

Nonetheless, the consumers must also show that the superior court abused its discretion in concluding that intervention would unnecessarily delay the consent judgment proceeding and prejudice the state, Lithia, and other Lithia customers who do not wish to opt out. Allowing intervention by the consumers would undoubtedly delay execution of the consent judgment and thereby prejudice those vehicle purchasers who wish to pursue their remedies through the consent

---

**28.** *State v. Enserch Alaska Const., Inc.,* 787 P.2d 624, 629 (Alaska 1989).

**29.** 893 P.2d 1239 (Alaska 1995).

**30.** *Id.* at 1250 (quoting *State v. Weidner,* 684 P.2d 103, 114 (Alaska 1984)).

judgment. As recommended in *Keane*,[31] the superior court invited the consumers to file an amicus brief to assist the court in reviewing the proposed consent judgment. The consumers filed a forty-page amicus brief, which the court considered before approving the consent judgment. Allowing any further involvement of the consumers—who have opted out—would cause further delay in providing relief to those Lithia customers who wish to remain as parties to the consent judgment rather than participating in the class action. Thus, the superior court's decision to deny the consumers' permissive intervention and allow them to participate as amicus curiae was within its discretion.

## V. CONCLUSION

Because the consumers fail to satisfy the requirements for intervention as of right and because the superior court did not abuse its discretion in denying permissive intervention, we AFFIRM the superior court's decision to deny intervention.

FABE, Chief Justice, not participating.