**354**

Herbert W. BROWN III, et al., Plaintiffs

v.

COLEGIO DE ABOGADOS DE PUERTO RICO, Defendant.

Civil No. 06–1645(JP).

United States District Court, D. Puerto Rico.

March 2, 2011.

Andres W. Lopez, Andres W. Lopez Law Office, David C. Indiano–Vicic, Seth Erbe, Indiano & Williams, PSC, Judith Berkan, Berkan & Mendez G–11 O'Neil, San Juan, PR, Carlos M. Vargas–Muniz, Carlos M. Vargas Law Office, Mayaguez, PR, for Plaintiff.

Carlos M. Franco, pro se.

Linda Backiel, Linda Backiel Law Office Calle Sierra Morena, Vicente & Cuebas, Pedro J. Landrau–Lopez, San Juan, PR, for Defendant.

Teresa M. Lube Capo, San Juan, PR, pro se.

## ORDER

JOSÉ ANTONIO FUSTÉ, Chief Judge.

Before the Court are: (1) Elías Dávila–Berríos, Marylucy González–Báez, Mary Jo Méndez–Vilella, Michelle Pirallo–Di Cristina, Rubén Soto–Rodríguez, and Wanda Valentín–Custodio's ("Proposed Dávila Subclass") motion to certify a subclass and to decertify the damages class in this case (**No. 341**); (2) José Julián Alvarez–González, Zaidée Acevedo–Vilá, Linda Backiel, Rogelio José Cardona–Cardona, Carmen Diana Irizarry, María L. Jiménez–Colón, Ana Matanzo–Vicéns, Efrén Rivera–Ramos, Wanda Rivera–Ortiz, and Luis Torres Rodríguez's ("Proposed Alvarez Subclass") motion to certify a subclass and to decertify the damages class in this case (**No. 364**); (3) the various motions seeking to join the Proposed Dávila Subclass and/or the Proposed Alvarez Subclass (**Nos. 342, 343, 344, 345, 347, 348, 349, 352, 353, 354, 355, 356, 358, 361, 362, 363, 371, 372, 373, 376, 378, 379, 380, 381, 382, 383, 389, 390, 391, 392, 394, 395, 396, 397, 402, 404, 407, 408, 409, 410, 412, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 427, 436, 437, 440, 441, 443, 444, 445, 446, and 448**); (4) Luis F. Camacho, José Andreu–Fuentes, José Olmo–Rodríguez, and Benny Frankie Cerezo–González's ("Proposed Camacho Class") motion requesting decertification of the damages class, certification of a subclass, clarification of an order, and requesting a stay of the proceedings (**No. 438**); (5) Class Plaintiffs' opposition thereto (**No. 370**); (6) Pedro Varela–Fernández's motion in the alleged best interests of justice

(No. 337); and (7) Class Plaintiffs' opposition thereto (No. 367). For the reasons stated herein, said motions are hereby **DENIED.**[1]

## I.

### *Introduction*

On June 27, 2006, Class Plaintiffs filed the instant class action against Colegio de Abogados de Puerto Rico ("Colegio") alleging that Colegio had violated the First Amendment rights of its members. Thereafter, Class Plaintiffs moved to certify two classes, one for declaratory relief and one for damages, and moved for summary judgment arguing that the decision in *Romero v. Colegio de Abogados de Puerto Rico,* Civil Case No. 94–2503, had preclusive effect in the instant action.

On July 31, 2008, the Court certified both of the requested classes. The damages class, certified under Fed.R.Civ.P. 23(b)(3), consists of all attorneys practicing in the Commonwealth of Puerto Rico local courts from 2002–2006, who were obligated to pay Colegio their yearly annual membership renewal fee in order to practice law in this jurisdiction. The Court then entered summary judgment and Final Judgment for the Class Plaintiffs on September 25, 2008 finding that Colegio's compulsory life insurance program violated the federal constitution.[2] The Court later amended its Judgment to add damages in the amount of $4,156,988.70, plus costs, interest, and attorney's fees.

Colegio appealed. On July 23, 2010, the First Circuit Court of Appeals issued an opinion in which it confirmed this Court's finding of liability, that Colegio breached its members' federal constitutional rights, and the Court's decision to grant injunctive relief. The First Circuit also affirmed the classes certified in this case. However, the First Circuit vacated this Court's Judgment insofar as it determined the amount of damages. The First Circuit ordered the Court to provide class members with notice including their right to opt-out. After the expiration of the notice period, the First Circuit authorized the Court to reinstate the damages award as calculated before, but this time excluding damages otherwise attributable to those who opted-out of the class.

After the case was remanded, the parties and the Court began, on September 2, 2010 (No. 168), the process of preparing a notice to be issued to class members with the Court-approved opt-out procedures. Prior to the Class Action Notice establishing the opt-out procedures being issued and as early as October 18, 2010, various petitions were filed with the Court requesting to opt-out of the damages class. Also, prior to the issuance of the Class Action Notice and to the Court approving the procedures for opting-out, Colegio began issuing communications (Nos. 183 and 188) to class members requesting that they opt-out through a form distributed by Colegio.

As such, Class Plaintiffs filed a motion for a protective order arguing that the communications being disseminated by Colegio were misleading. After considering the arguments, Judge Jaime Pieras, Jr. determined that the communications issued by Colegio were both misleading and aimed at coercing class members into opting-out (No. 202). Judge Pieras also determined that the opt-out forms submitted through the electronic filing system would not be considered valid, since class members had not had the opportunity to receive the neutral Class Action Notice with the Court-approved opt-out procedures and since class members could have easily have been misled by Colegio's communications. Accordingly, Judge Pieras en-

---

**1.** Also before the Court is a motion informing the Court that a class member has mailed his opt-out to the Administrator stating that he does not want to be included in the damages class (**No. 413**). Said motion is **NOTED.**

**2.** The Court also notes that Colegio was aware since the *Romero* decision in 2002 that its compulsory life insurance program violated the First Amendment. However, Colegio ignored said decision and continued to make the payment of the life insurance mandatory. Further, Colegio did not fully advise its members that they no longer had to purchase the insurance, threw obstacles in front of those trying to opt out, delayed refunds, and even moved to disbar one individual who refused to pay that portion of his dues attributable to the insurance program. *Brown v. Colegio de Abogados de Puerto Rico,* 613 F.3d 44, 49 (1st Cir.2010).

tered a narrowly-tailored protective order precluding Colegio from communicating directly or indirectly with class members without prior leave of Court regarding this litigation or the claims therein until the class notice was provided and the opt-out procedures were completed.

After the protective order was issued but before the Notice of Class Action with the opt-out procedures was issued, Colegio informed the Court that it had around 1,200 opt-outs in its possession. Class Plaintiffs moved to have said 1,200 pre-notice opt-outs precluded from consideration for the benefit of class members because of the potential of said opt-outs being the product of Colegio's misleading tactics and because class members had not had the benefit of receiving the Class Action Notice (No. 259). On December 29, 2010, the undersigned held in abeyance Class Plaintiffs' request and also reversed Judge Pieras previous decision at docket number 202 and determined that the Court would consider those opt-outs submitted through the Court's electronic filing system (No. 269).

On January 12, 2011, the undersigned entered another order (No. 276) setting aside his decision at docket number 269 to count the opt-outs submitted through the Court's electronic filing system. The undersigned did so upon further reflection of Judge Pieras' previous determination on the issue at docket number 202. Also, in said order, the Court determined that it would not consider the 1,200 pre-notice opt-outs in Colegio's possession. The Court explained that opting-out would be done in compliance with the procedures set forth in the Class Action Notice. Also, the Court amended the Class Action Notice to deal with this issue by including in bold:

**If prior to the issuance of this notice you have filed an anticipatory notice of intent to opt out with the Clerk of the U.S. District Court for the District of Puerto Rico, with the Colegio de Abogados de Puerto Rico or through CM–ECF directly, you must still reaffirm your opt out decision by following the procedures for opting out set out in this notice.**

The Class Action Notice in this case was officially mailed on January 26, 2011, to class members utilizing the addresses produced by Colegio.[3] Said notice established a simple Court-approved procedure for opting-out and provided class members with a neutral and accurate account of the proceedings in this case.[4] To opt-out, class members had to mail and postmark a letter, on or before February 26, 2011, to the *Brown v. Colegio de Abogados Administrator* (the "Administrator") stating "I do not want to be part of the Damages Class in *Brown v. Colegio de Abogados de Puerto Rico,* CV 06–1645(JP)." Said request had to be signed, and include the name, address, and telephone number of the class member. Also, the notice stated that the address listed should be the address to which the notice was mailed so that individual class members could be easily identified.

After the Class Action Notice was sent, Colegio decided to violate the protective order in this case and began disseminating more inaccurate and misleading information to class members. There is no need to go into the misinformation disseminated by Colegio as said misinformation has been accurately summarized in multiple orders, including the Court's order finding Colegio and its President in civil contempt (Nos. 319, 384, and 398).

## II.

### *Motions to Decertify the Damages Class and to Certify Subclasses*

The Proposed Dávila Subclass filed its motion on February 16, 2011 (No. 341). In their motion, the Proposed Dávila Subclass

---

**3.** The undersigned entered his opt-out into the system on January 26, 2011 (No. 291). Also, in compliance with the instructions in the Class Action Notice, both Judge Pieras and the undersigned mailed, prior to February 26, 2011, their opt-outs to the *Brown v. Colegio de Abogados Administrator.*

**4.** Such a neutral and accurate notice was necessary in order to clarify the misleading information previously disseminated by Colegio.

argues that the Court should decertify the damages class for lack of adequate representation. They also request that the Court certify a subclass composed of:

> All current members of the Colegio de Abogados, who were also members at any time between 2002 and 2006, and submitted or attempted to submit 'opt-out' forms between July 23, 2010 and January of 2011, expressing their clear intention not to be members of the class action in this case, whose efforts were stymied and suppressed *inter alia* by the actions of their purported class representatives, and who have not yet received any notification confirming that their wishes with respect to opt-out are being honored.

The class representatives of the Proposed Dávila Subclass and their attorney Judith Berkan all state that they have mailed their opt-outs to the Administrator and that they did so prior to February 26, 2011.[5]

On February 21, 2011, the Proposed Alvarez Subclass filed its motion (No. 364) requesting decertification of the damages class for lack of adequate representation and requesting certification of a subclass. The Proposed Alvarez Subclass is composed of:

> All current members of Colegio de Abogados, who were also members at any time between 2002 and 2006, and who submitted or attempted to submit requests to be excluded from the original class after January 2011, expressing their clear intention not to be members of the class representatives in this case, whose rights were not adequately protected by the original class representatives who failed to assure that they were notified of the pendency of the action, the request for class certification and their right to opt out, and who have

not yet received any notification confirming that their wishes with respect to the opt out are being honored.

The class representatives to the Proposed Alvarez Subclass and their attorney Nora Vargas Acosta all state that they have mailed their opt-outs to the Administrator and that they did so prior to February 26, 2011.

Various individual class members also requested to join the Proposed Daáila Subclass and/or the Proposed Alvarez Subclass (Nos. 342, 343, 344, 345, 347, 348, 349, 352, 353, 354, 355, 356, 358, 361, 362, 363, 371, 372, 373, 376, 378, 379, 380, 381, 382, 383, 389, 390, 391, 392, 394, 395, 396, 397, 402, 404, 407, 408, 409, 410, 412, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 427, 436, 437, 440, 441, 443, 444, 445, 446, and 448).

Lastly, the Proposed Camacho Subclass filed its motion on February 25, 2011 (No. 438). In its motion, they request decertification of the damages class for failure to comply with Fed.R.Civ.P. 23, the certification of a subclass and an Order clarifying the Court's order entered on January 26, 2011.[6] The proposed subclass is defined as:

> All current voluntary members of the Colegio de Abogados, present or absent, who were also members at any time between 2002 and 2006, who were never informed of the damages claim against the institution to which they voluntarily belonged and its possible consequences with regards to Colegio de Abogado's assets and who were not allowed to receive information from the institution to which they voluntarily belonged by the express actions of their alleged class representatives.

The members of this proposed subclass have all mailed their opt-outs to the Administrator and they did so prior to February 26, 2011.[7]

---

5. The Court notes that one of the proposed members of the subclass, Wanda Valentín–Custodio ("Valentín"), stated in the motion that while she has not yet mailed her opt-out, she intends to do so before February 26, 2011. In light of her certification that she would mail said opt-out prior to the deadline and of the fact that the deadline has passed, the Court will treat Valentín, for the purposes of this Order, as if she had mailed the opt-out to the Administrator. Furthermore, Class Plaintiffs informed the Court that all the purported class representatives have been opted-out (No. 460).

6. The Proposed Camacho Subclass also requests a hearing and an order staying the proceedings. Said requests are **DENIED**.

7. While the Proposed Camacho Subclass failed to state whether they mailed opt-outs prior to February 26, 2011, in their motion, Class Plaintiffs filed an informative motion informing the Court that the purported class representatives opted-out of the action (No. 451). Since class members had to mail their opt-out to the Administrator by February 26, 2011, to opt-out, the Court concludes that the purported class repre-

Class Plaintiffs opposed the motion arguing, *inter alia,* that all the motions should be denied, since the purported class representatives of the three proposed subclasses lack standing in the instant action.

### A. *Standing*

After considering all the arguments, the Court determines that both the Proposed Alvarez Subclass and the Proposed Camacho Subclass lack standing. Also, the Court finds that the large majority of those who are part of the Proposed Dávila Subclass lack standing and that the other purported members might lack standing.

■ Put simply, once the class members decided to opt-out by mailing their opt-outs to the Administrator they are no longer part of the damages class. By opting-out of a Fed.R.Civ.P. 23(b)(3) class action, those former class members fully preserved their legal rights and cannot challenge another order resolving the legal rights of others. *See Mayfield v. Barr,* 985 F.2d 1090, 1093 (D.C.Cir.1993); *see also, In re Vitamins Antitrust Class Actions,* 215 F.3d 26, 28–29 (D.C.Cir.2000).[8] As such, when class members opted-out by mailing their opt-out to the Administrator, they lost standing to challenge the legal rights of those individual class members who chose not to opt-out.

As explained above, the entire Proposed Camacho Subclass opted-out of the instant case. As such, their motion (**No. 438**) is hereby **DENIED.**[9] Similarly, the Court explained above that the Proposed Alvarez Subclass has stated how they have opted-out. Also, the individual class members seeking to join their motion have also stated that they have opted-out (**Nos. 396, 426, 436, 443, 444, 445, 446 and 448**). Accordingly, the motion (**No. 364**) filed by the Proposed Alvarez Subclass and the motions (**Nos. 396, 426, 436, 443, 444, 445, 446 and 448**) to join said subclass are hereby **DENIED.**[10]

Lastly, with regard to the Proposed Dávila Subclass, the purported representatives of said subclass, as previously explained, have all opted-out and, therefore, lack standing. Also, the large majority of all those class members seeking to join the motion have opted-out and similarly lack standing (**Nos. 342, 343, 344, 345, 347, 348, 349, 352, 353, 354, 355, 356, 361, 362, 363, 371, 372, 373, 376, 379, 383, 389, 390, 391, 392, 394, 395, 396, 397, 402, 407, 408, 409, 410, 412, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 427, 436, 437, 440, 441, and 443**). Said motions to join are, therefore, **DENIED.**

However, a few of those individual class members seeking to join have not made clear whether they have opted-out (Nos. 358, 378, 380, 381, 382, and 404). The Court finds that if those individual class members did opt-out, then the Proposed Dávila Subclass lacks standing and the motion (No. 341) to decertify the class and certify a subclass would be denied automatically.

### B. *Proposed Dávila Subclass*

In light of the fact that, as previously explained, not all of the individuals seeking to join the Proposed Dávila Subclass made clear whether they opted-out, the Court will assume that the Proposed Dávila Subclass has standing and rule on their motion (No. 341). In their motion, the Proposed Dávila Subclass in essence argues that the current damages class should be decertified and the proposed subclass certified because the current class representatives have failed to comply with the adequate representation require-

---

sentatives of the Proposed Camacho Subclass mailed their opt-outs to the Administrator prior to the February 26, 2011.

**8.** While the cases cited by the Court ruled on the standing issue in the context of a settlement of a Fed.R.Civ.P. 23(b)(3) class action, the Court finds that the reasoning for reaching the determination that the individuals in said cases lacked standing to challenge the settlements applies with equal force to the situation in this case were the individuals who have opted-out of the Fed.R.Civ.P. 23(b)(3) class are attempting to challenge orders affecting the rights of the class members who chose not to opt-out.

**9.** In light of the Court's ruling on said issue, the other motions filed by the Proposed Camacho Subclass (**Nos. 439, 442, 447, and 455**) are hereby **MOOT.**

**10.** In light of the Court's ruling of said issue, the motion at docket number 385 filed by the Proposed Alvarez Subclass is hereby **DENIED.**

ment. Specifically, they argue that the class representatives did not provide adequate representation to the entire damages class because the proposed subclass wanted to be able to freely communicate with Colegio and because they wanted the approximately 1,200 pre-notice opt-outs in the possession of Colegio to count.

The Proposed Dávila Subclass' argument lacks merit. Class representatives have not only represented the **entire** class adequately, but have done so exceptionally. From the beginning of this case, they have vigorously defended the rights of class members to be free from Colegio's attempts to violate class members' rights. Class representatives have done so to the point where they have obtained a finding of liability against Colegio in this Court and which was also affirmed by the First Circuit.[11] Similarly, they have been able to ensure that Colegio will no longer violate the rights of class members by continuing to force them to pay for the compulsory life insurance.

Also, the Proposed Dávila Subclass seems to blame class representatives for the fact that they could not communicate with Colegio about this case during the opt-out process. Said blame is misplaced. The **only** party responsible for the inability of class members to communicate with Colegio regarding the issues in this case is Colegio itself. As has been well documented in this case, since the *Romero* decision in 2002, Colegio has been engaging in a campaign to mislead and misinform its own members about their rights and about this case (Nos. 202, 319 and 398). Colegio's deceptive tactics towards class members left the Court with no choice but to enter a protective order so as to protect the interest of the class in making an informed decision.[12]

The Proposed Dávila Subclass states that it would have benefitted from discussion with Colegio about the issues in this case. In-

stead of placing the blame on class representatives, perhaps the Proposed Dávila Subclass should ask Colegio why it spent its time breaching the protective order (No. 319) instead of focusing its efforts on working with the Court to provide the Proposed Dávila Subclass with the discussion they desired. The protective order was specifically designed in this case to allow Colegio to communicate with class members with leave of Court. Colegio requested leave of Court to communicate with class members only one time and did not do so until four days before the expiration of the opt-out period. As such, the Proposed Dávila Subclass has no one to blame for the lack of communication with Colegio but Colegio itself.

The Court also finds that the Proposed Dávila Subclass' argument related to the approximately 1,200 pre-notice opt-outs in the possession of Colegio fails. Under Fed. R.Civ.P. 23(c)(2)(B)(vi), the Court has to establish the time and manner for opting-out. The Court established said procedure in the Class Action Notice. In this particular case, Colegio had in its possession around 1,200 opt-outs. Said opt-outs had been prepared prior to opt-out procedures being established by the Court. Also, said opt-outs were prepared around the time when the protective order was issued and when Colegio was engaging in its misinformation campaign.

█  Because it was in the best interests of the **entire** class, class representatives moved for and the Court granted the exclusion of said pre-notice opt-outs. Put simply, there was no way of knowing whether said opt-outs were the product of Colegio's misleading tactics or the genuine desire of class members to opt-out. The best method to ensure that said opt-outs were the product of class members' desire to opt-out was to issue the Class Action Notice with a neutral and accurate statement of this case.[13]  Thereafter, class

---

11. Colegio appealed this Court and the First Circuit's finding of liability to the U.S. Supreme Court and was denied certiorari.

12. The Proposed Dávila Subclass seems to suggest that class representatives should have sat idly by while Colegio misled and attempted to coerce class members into opting-out. Had class representatives done this, then the Proposed Dá-

vila Subclass would have a stronger argument that class representatives failed to adequately represent the interests of the class.

13. The Court also notes that it was class representatives' duty to ensure that class members were provided with a neutral statement of the case.

members, if they still wished to do so, could reaffirm their desire to opt-out by complying with the simple procedures in the Class Action Notice. To prevent any confusion, the Court included language, previously quoted in the introduction section of this Order, in the Class Action Notice explaining that class members who provided Colegio with opt-outs prior to the issuance of the Class Action Notice had to reaffirm their desire to opt-out.[14] If class representatives had done as the Proposed Dávila Subclass suggests and not requested exclusion of said opt-outs, the class members would have not been providing adequate representation to class members.[15]

Accordingly, the motion (**No. 341**) filed by the Proposed Dávila Subclass to decertify the damages class and to certify a subclass, and the motions to join (**Nos. 358, 378, 380, 381, 382, and 404**) are hereby **DENIED**.[16]

## III.

### *Motion in the Best Interests of Justice*

Pedro Varela–Fernández ("Varela") filed a motion (**No. 337**) requesting that the Court issue an order to class members instructing them to send a letter to the Administrator if the class members wish to receive payment of the amounts due to them. Said motion is **DENIED**.

The motion is denied because in his motion Varela concedes that he mailed his opt-out to the Administrator. As such, he lacks standing. Furthermore, the motion lacks merit. Varela is, in essence, but without actually saying so, requesting an opt-in procedure. In its decision, the First Circuit made clear that class members were to be given an opportunity to opt-out. Also, as explained at docket number 449, the notice given in this case has been more than adequate.

14. Also, the pre-notice opt-outs were premature as they were prepared before the Court had even established the procedures for opting-out and provided class members with an explanation of their rights.

15. The Court notes that nothing expressed by the proposed subclass leads the Court to conclude that there is a need to create a subclass. If class members wish to support Colegio as it appears that is what the proposed subclass is arguing,

## IV.

### *Conclusion*

Thus, the Court hereby: (1) **DENIES** the three motions to decertify the damages class and to certify subclasses (**Nos. 341, 364, and 438**); (2) **DENIES** the motions to join the Proposed Alvarez Subclass and the Proposed Dávila Subclass (**Nos. 342, 343, 344, 345, 347, 348, 349, 352, 353, 354, 355, 356, 358, 361, 362, 363, 371, 372, 373, 376, 378, 379, 380, 381, 382, 383, 389, 390, 391, 392, 394, 395, 396, 397, 402, 404, 407, 408, 409, 410, 412, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 427, 436, 437, 440, 441, 443, 444, 445, 446, and 448**); (3) **DENIES** the motion filed by Varela (**No. 337**); (4) **DENIES** the motion to join filed by the Proposed Alvarez Subclass (**No. 385**); (5) **FINDS AS MOOT** the motions (**Nos. 439, 442, 447, and 455**) filed by the Proposed Camacho Subclass; (6) **DENIES** the supplemental motion (**No. 411**) and the motion (**No. 377**) for miscellaneous relief filed by the Proposed Dávila Subclass; and (7) **NOTES** the motion informing the Court that the class member has mailed his opt-out to the Administrator (**No. 413**).

In sum, the damages class certified in this case is the best possible class that could be certified and the subclasses requested are unnecessary. The First Circuit has already affirmed this Court's finding of liability against Colegio and this Court's certification of the damages class. The First Circuit issued a clear mandate in this case regarding the provision of notice and of the opportunity to opt-out to members of the damages class.

The Court, with the assistance of the parties, has ensured that said notice has been provided in the most equitable and complete way possible. Also, the opt-out procedures have been developed to be clear and simple,

then they could do so by opting-out through the simple Court-established procedures.

16. Also before the Court are the supplemental motion by the Proposed Dávila Subclass (**No. 411**), and the motion requesting miscellaneous relief (**No. 377**). In light of the Court's ruling on the issues addressed in this motion, the motions are **DENIED**.

and to allow those who wish to support Colegio by opting-out to do so.

**IT IS SO ORDERED.**